IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
INDIAN HARBOR INSURANCE COMPANY, as
successor in interest to CATLIN SPECIALTY
INSURANCE COMPANY,

    Plaintiff,

    v.

THE HUNT CORPORATION

    Defendant.
------------------------------------------------------------------x

Civil Action No.

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff Indian Harbor Insurance Company, as successor in interest to Catlin Specialty Insurance Company, ("Indian Harbor") by its attorneys Mound Cotton Wollan & Greengrass LLP, as and for its Complaint against Defendant The Hunt Corporation ("Hunt"), alleges as follows:

## INTRODUCTION

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, by which Catlin seeks a judgment declaring it has no duty to indemnify Hunt under its Contractor's Protective, Professional, and Pollution Liability Insurance Policy–CP3, eff. June 15, 2014, to June 15, 2015, with respect to the claim for damages made by Canam Steel Corporation ("Canam") in the case styled *Canam Steel Corporation v. Hunt Corporation et al.*, Case No. 1:17-cv-00214 (E.D.N.Y.) (the "Underlying Action").

1

2. Canam brought the Underlying Action to recover damages it alleges it incurred in connection with work performed under a subcontract with Hunt, who had been engaged as construction manager for the installation of a retractable roof at the Arthur Ashe Stadium in Queens, New York.

3. Pursuant to the discovery developed in the Underlying Action, including Canam's express statements as to the nature of the relief it seeks from Hunt, Canam's damages, if any, represent no more than the enforcement of the contractual bargain it entered into with Hunt.

4. The Policy contains a clear exclusion for any liability arising out of "Contractual Liability."

5. Indian Harbor is entitled to a declaration that it has no duty to indemnify Hunt with respect to Canam's claim in the Underlying Action.

## THE PARTIES

6. Indian Harbor is a foreign corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Connecticut.

7. Hunt is a foreign corporation organized under the laws of the State of Indiana, with its principal place of business in the State of Indiana.

## JURISDICTION AND VENUE

8. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Indian Harbor and Hunt and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

# THE POLICY

10. Indian Harbor issued Contractor's Protective, Professional, and Pollution Liability, policy number CPL-196189-0615, for the period June 15, 2014, to June 15, 2015 to Hunt (the "Policy").

11. Subject to its terms and conditions, the Policy provides "Professional Liability" coverage under Coverage B:

> The **Insurer** will pay on behalf of the **Insured** all sums in excess of any applicable Self-Insured Retention that the Insured is legally obligated to pay as **Damages** or **Claim Expense** because of a **Claim** for an actual or alleged negligent act, error or omission in the rendering of **Professional Services**, provided that:
>
>> 1. the **Claim** for such actual or alleged negligent, act, error or omission is first made against the **Insured** during the **Policy Period** and first reported in writing by the **Insured** to the **Insurer** within 60 days after either the end of the **Policy Period** or the end of the Optional Extended Reporting Period, if applicable; and
>>
>> 2. the **Claim** arises out of an actual or alleged negligent, act, error or omission performed by the **Insured**, or by a **Design Professional** for whom the **Insured** is legally responsible, on or after the **Retroactive Date** and before the end of the **Policy Period**; and
>>
>> 3. prior to the effective date of the first policy issued to the **Insured** and continuously renewed by the **Insurer**, no **Named Insured**, or principal, partner, director, officer, or risk manager of the **Insured**, had a basis to believe that any act, error or omission asserted in the **Claim** might reasonably be expected to be the basis of a **Claim**.

12. The exclusions section of the Policy provides in relevant part:

**IV. Exclusions**

> This Policy does not apply and the **Insurer** will not be liable to make payments, defend or indemnify any **Insured** for any **Ultimate Loss**, **Damages**, **Pollution Loss, Claim** or **Claim Expense**, or to pay any amounts pursuant to any Supplemental Coverage, directly or indirectly arising out of any of the following. To the extent an exclusion below applies by reason of the act, error or omission of

**Insured,** it shall also apply to the act, error or omission of anyone retained by an **Insured** or for whom the **Insured** is legally responsible.

…

**H.** Liability under any contract, agreement, express warranty, or guarantee, unless such liability would have existed in the absence of such contract, agreement, express warranty, or guarantee.

Solely for the purposes of Coverage C - Contractor's Pollution Liability, this exclusion shall not apply to liability of others assumed under an **Insured Contract.**

## THE ARTHUR ASHE STADIUM PROJECT AND UNDERLYING ACTION

13. In March 2014, the USTA National Tennis Center Incorporated retained Hunt as construction manager for the design and build of a retractable roof to be installed over the Arthur Ashe Stadium at the USTA Billie Jean King National Tennis Center in Flushing Meadows-Corona Park, Queens, New York (the "Project").

14. Hunt subsequently engaged various subcontractors to work on the Project, including but not limited to Canam, whose contractual scope of work included, among other things, the fabrication of steel for the Project.

15. The contract between Hunt and Canam expressly recognized that the relevant designs for the Project were not final and provided for material changes in scope to be addressed via change order:

> To the extent the Project drawings and specifications are anticipated to require further development by the Designer, Subcontractor has provided in the Subcontract Sum for such further development consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include such things as material changes in scope which, if required, shall be incorporated by Change Order.

16. There were delays in the fabrication and delivery of steel for the Project.

4

17. In 2017, Canam instituted the Underlying Action against Hunt and other parties in order to recover its alleged increased costs as a result of a changed design and accelerated schedule for the Project.

18. By letter dated March 28, 2018, Indian Harbor agreed to defend Hunt under the Policy with respect to the Underlying Action, subject to a reservation of rights, including on the basis of the Contractual Liability exclusion of the Policy.

19. Indian Harbor has since continued to defend Hunt under its reservation of rights.

20. As the Underlying Action progressed, Indian Harbor received additional information from Hunt, including materials developed in discovery, as to the nature and basis of Canam's claims for damages. These materials support the conclusion that coverage for the Canam claim is precluded by the Contractual Liability exclusion of the Policy.

21. Hunt has made a formal demand for indemnity under the Policy with respect to Canam's claim.

22. In response to Hunt's demand, Indian Harbor denied indemnity coverage for the Canam claim on the basis of the Contractual Liability exclusion.

## AS AND FOR A FIRST CLAIM FOR RELIEF

**(Declaratory Judgment as to Indian Harbor's Duty to Indemnify)**

23. Indian Harbor repeats and re-alleges paragraphs 1-22 above with the same force and effect as if fully set forth herein.

24. By virtue of the foregoing, an actual and justiciable controversy in excess of $75,000 has arisen and now exists between Indian Harbor and Hunt concerning the availability of indemnity coverage under the Policy for Canam's claim.

25. A judicial determination is necessary and appropriate at this time so that Indian Harbor and Hunt may ascertain their respective rights and obligations under the Policy with respect to the indemnification of Hunt as respects Canam's claim in the Underlying Action.

26. Pursuant to the Policy, Indian Harbor has no duty to indemnify Hunt for liability which arises out of a contract unless such liability would have existed in the absence of such contract.

27. The recovery Canam seeks from Hunt concerns damages that are contemplated by and fall within the provisions of the subcontract between Hunt and Canam.

28. As such, Indian Harbor is entitled to a judgment declaring that it is not obligated to indemnify Hunt with respect to Canam's claim in the Underlying Action.

**WHEREFORE,** Indian Harbor respectfully requests that a judgment be made and entered granting it the following relief:

(a) On its First Claim for Relief, a declaration that Indian Harbor has no duty to indemnify Hunt with respect to Canam's claim in the Underlying Action.

(b) Such other and further relief as the Court deems just, fair and proper.

Dated: December 16, 2022
New York, New York

**MOUND COTTON WOLLAN & GREENGRASS LLP**

By: *[signature]*

_____
LLOYD A. GURA
ANDREA FORT
One New York Plaza
New York, NY 10004
Tel: 212.804.4200

*Attorneys for Plaintiff Indian Harbor Insurance Company*